UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JACKSON G.G., Petitioner, v. DAVID EASTERWOOD, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; DAVID J. VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; TODD BLANCHE, Acting Attorney General of the United States; and ERIC KLANG, Crow Wing County Sheriff, Respondents. | Case No. 26-CV-3093 (PJS/EMB)<br>ORDER |

Katherine Lourdes Santamaria El Bayoumi, CONTRERAS EDIN LAW, PA, for petitioner.

David R. Hackworthy, DEPARTMENT OF HOMELAND SECURITY, for all respondents except Eric Klang.

This matter is before the Court on petitioner Jackson G.G.'s petition for a writ of habeas corpus.[1] Jackson, a citizen of El Salvador, came to the United States in

---

[1]Pursuant to this District's policy in immigration cases, the Court identifies petitioner only by first name and last initials.

September 2024, when he was 17 years old. V. Pet. ¶¶ 2, 24.[2] Upon encountering Jackson, the Department of Homeland Security ("DHS") determined that he was an unaccompanied minor. V. Pet. ¶ 25. Accordingly, as required by 8 U.S.C. § 1232(c)(2), DHS transferred Jackson to the custody of the Office of Refugee Resettlement ("ORR"), which is part of the Department of Health and Human Services ("DHH"). V. Pet. ¶ 27. Pursuant to the statutory mandate to place unaccompanied children "in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), ORR released Jackson to the care of his uncle under a sponsor-care agreement. V. Pet. ¶ 29; ECF No. 5-2 at 5.

In May 2025, DHS issued Jackson a Notice to Appear ("NTA"), thereby initiating removal proceedings under 8 U.S.C. § 1229a. V. Pet. ¶ 30; ECF No. 5-3; 8 U.S.C. § 1232(a)(5)(D) (requiring that unaccompanied minors be placed in § 1229a removal proceedings). Jackson diligently attended and participated in the proceedings. V. Pet. ¶ 30.

On June 11, 2026, Jackson was arrested by Immigration and Customs Enforcement ("ICE") agents during a raid at a roofing site in Bemidji, Minnesota. V. Pet. ¶ 31; ECF No. 5-4 at 2. Jackson alleges that he was arrested without a warrant.

[2]Respondents contend that the Court should dismiss the petition because Jackson did not verify it himself and failed to allege why he could not do so. The Court rejects this argument largely for the reasons stated in *Vu V.L. v. Mullin*, No. 26-CV-2947 (LMP/JFD), 2026 WL 1893611, at *3 (D. Minn. July 1, 2026).

V. Pet. ¶¶ 4, 32, 108. In response to Jackson's habeas petition, respondents have submitted a copy of a Form I-200 warrant dated June 11, 2026. ECF No. 5-5.

Jackson now seeks habeas relief in the form of release or a bond hearing, arguing that his detention is unlawful under the statutes governing unaccompanied minors, the Fifth Amendment, and the Administrative Procedure Act ("APA"), and that his arrest violated the Fourth Amendment and the APA.

## I. ANALYSIS

Because the Court agrees with Jackson that his arrest was unlawful, the Court will grant his petition in part and order his release without addressing his other claims.[3]

The Immigration and Nationality Act provides two mechanisms by which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from

---

[3]The Court notes that, even if Jackson's arrest were lawful, he would at a minimum be entitled to a bond hearing. Under the plain language of 8 U.S.C. § 1232(c)(2)(B), an unaccompanied minor who has turned 18 and been transferred to the custody of the Secretary of Homeland Security is entitled to consideration for "placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." *See F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025) (explaining that the petitioner, who originally entered the United States as an unaccompanied minor and is now an adult, could not be subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because that detention scheme is "facially incompatible" with the language of 8 U.S.C. § 1232).

the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C. § 1357(a), ICE has "limited authority" to make warrantless arrests. *Arizona*, 567 U.S. at 408. As relevant to this case, an immigration officer may arrest an alien without a warrant for being "'in the United States in violation of any [immigration] law or regulation,' . . . but only where the alien 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (first alteration in original).

*A. Arrest Pursuant to Form I-200 Administrative Warrant*

As noted, Jackson was arrested on June 11, 2026, and respondents contend that he was served with a Form I-200 arrest warrant at that time. But nothing in the record indicates that the warrant was prepared before Jackson's arrest.

Because Jackson is in removal proceedings, respondents presumably had access to information about his identity and status before his arrest. There is no evidence, however, that respondents knew that Jackson was at the Bemidji worksite. Instead, respondents submitted the same evidence that they have submitted in other habeas cases involving the individuals that they arrested at the worksite on June 11, 2026—a vague and generic statement, not supported by any specifics or factual basis, that they had "information indicating that multiple individuals working at the site were present in the United States without legal authorization." VanDerVaart Decl. ¶ 6. There is no indication that this assertion is made on the declarant's personal knowledge, nor is

there any description of when exactly the warrant was prepared. Moreover, the warrant states that it is based on the earlier NTA, the pendency of removal proceedings, statements voluntarily made by Jackson, "and/or other" unspecified evidence. ECF No. 5-5. Because it uses "and/or," the warrant fails to identify on what it is based. Instead, it identifies several categories of information, and leaves the reader to guess which category or categories were actually relied upon in Jackson's case.

As noted, because there is nothing demonstrating that respondents knew that Jackson was at the worksite, they would not have known that an individual there had a pending removal proceeding. And as discussed below, according to respondents, when ICE agents arrived at the worksite, Jackson and the other workers fled, were chased down, and immediately arrested. If this account is true,[4] there was no time for Jackson to have made statements before his arrest.

Based on the record before it, the Court therefore finds that the warrant was not prepared until *after* Jackson's arrest, meaning that Jackson was arrested without a valid warrant. *See Ahmed S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *4 (D. Minn. July 10, 2026) ("Respondents cite no authority to support the proposition that an arrest can be made *pursuant to* an administrative warrant issued after the noncitizen

---

[4]Jackson alleges that he "did not run or try to evade the officers." V. Pet. ¶ 32. Needless to say, if that allegation is true, that would cast doubt on the agents' entire account.

has already been taken into custody."); *see also* 8 C.F.R. § 236.1(b)(1) (stating that a respondent in removal proceedings "may be arrested and taken into custody *under the authority of Form I–200, Warrant of Arrest*" (emphasis added)).

*B. Warrantless Arrest Pursuant to 8 U.S.C. § 1357(a)(2)*

Under 8 U.S.C. § 1357(a)(2), an immigration official may conduct a warrantless arrest of an alien, but only "if [the official] has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The Eighth Circuit has construed "reason to believe" in § 1357(a)(2) to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

As the Court has already explained, respondents have not shown that, before arriving at the worksite, they even knew that Jackson was present. Respondents contend that, after arriving at the worksite but before arresting Jackson, they obtained information about his identity and status during a *Terry* stop.[5] ECF No. 5 at 22–23. But the record does not support respondents' claim that the agents conducted a *Terry* stop. Nothing in the materials that respondents have submitted indicates that Jackson was questioned or provided any information before he was arrested. To the contrary,

[5]*See Terry v. Ohio*, 392 U.S. 1 (1968).

respondents' own documents state that, "[w]hen Officers arrived in the area, the subjects scattered and ran, including [Jackson]. Officers chased down and apprehended [Jackson] and the remainder of the subjects. Officers served [Jackson] the I-200 and transported [sic] to the Crow Wing County Jail for direct ICE booking and administrative processing." ECF No. 5-4 at 3.

In a materially identical case involving the arrest of another individual at the same work site, Judge Provinzino recently concluded that, at the time of the individual's arrest, respondents lacked probable cause to believe that he was in the United States in violation of the immigration laws. *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *2 (D. Minn. July 2, 2026). As Judge Provinzino explained, respondents' narration—including the word "apprehended" and the assertion that the agents served the arrest warrant after the "apprehen[sion]"—supports a conclusion that the agents did not, in fact, conduct a *Terry* stop, but instead immediately arrested the individuals (including Jackson). *Id.* at *4. The Court agrees with Judge Provinzino's analysis, and further agrees that Jackson's flight also failed to provide probable cause for his arrest. *Id.* at *3–5.

The Court therefore finds that Jackson's warrantless arrest was not lawful under either § 1226(a) or § 1357(a)(2). Accordingly, Jackson's petition is granted in part, and the Court orders respondents to release him within 48 hours of the entry of this order.

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for unlawful executive detention).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioner's petition for a writ of habeas corpus [ECF No. 1] is GRANTED IN PART.

2. Respondents must release petitioner within 48 hours of entry of this order. Respondents must release petitioner in Minnesota.

3. The remainder of petitioner's petition [ECF No. 1] is DENIED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 20, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge